The next case for argument today is White v. United States. Mr. Brinkle. Thank you, Your Honor. I may have pleased the Court. My name is David Brinkle and I represent Mr. White. The issue before the Court here today is whether or not Mr. White is properly defined as an armed career criminal under current case law and whether or not Mr. White procedurally defaulted on those arguments previously. Of course, it is our argument to the Court today that under current case law Mr. White does not qualify as an armed career criminal and he did not procedurally default on those arguments previously. Mr. Brinkle, how do you factor the Ruth case into the Reed-Cross determination as to whether or not it is an example of a new rule? Sure. Your Honor, I would say that reading certainly across—good question, Your Honor—signal this Court's willingness to use current case law when dealing with sort of Johnson claims. The thing about Ruth is its entirely novel nature. For a long period of time, I think the types of convictions at issue in this case, the cocaine distribution convictions, were widely viewed as qualifying offenses in this Court. And so, I think in the Government's—if I understand the Court's question correctly, the Government's brief sort of points to your question, which is that a categorical mismatch argument isn't necessarily novel, and that's true. But the way Ruth does it is novel. This idea that the definition of a cocaine isomer would make a conviction not count is very novel and not something that had been, I don't think, tried before, even though I guess it might have technically been available previously. That's a big question here. Did anything prevent White from arguing on direct appeal all the points that later succeeded in Ruth? Your Honor, I think the short answer is no. On direct appeal, I think he could have argued those. I would say, though, Your Honor— Then that raises a problem for you, I think, under the Supreme Court's opinion in Boozley, which says that arguments that can be made must be made in order to be preserved for review on collateral attack. Your Honor, I guess before—I mean, I'm sure that the Court is quoting that case correctly. What I was about to qualify in my statement or my answer to your question, I do think that on appeal, Mr. White would have had some problems presenting the Johnson argument because it had been rejected at that point. I mean— But, Mr. Brangham, I'm going to interrupt and say that the problem that I have with your case—I mean, there is the point that you just exchanged with Judge Easterbrook, which is, as you said, there wouldn't have been anything to prevent you, even though nobody had thought about this problem with the Illinois statute not quite matching up with the federal statute at the time of your direct appeal. But this really, in some sense, gets down to the rule that's going to be followed for substituting predicate offenses for ACCA. You can't leverage Johnson all the way over into Ruth—Johnson being a Supreme Court decision and a constitutional decision, Ruth being a court of appeals decision, fundamentally a statutory decision. They're not the same. Now, there may be some notice issue, and we've seen a wide range of approaches in the circuits to the way district courts are allowed to respond when one of the underlying convictions gets knocked out, as happened here, correctly under Johnson. But there was a list of other possibilities, and the court used it. So, I don't know. I'm just uncomfortable with the way you're patching these all together, unless you were to be arguing for just a rigid rule that says, in this circumstance, somehow, the government wasn't entitled to add in a new offense. Your Honor, thank you for the question. I don't know that I intend to argue for a rigid rule. I do think that, in this instance, Your Honor, at least the way I had planned to present this to the court, maybe the court disagrees. I mean, fundamentally, the authorities were this court, and I'm just making arguments. But the government should not have been allowed to add in a conviction when the court considered Johnson or the issue again. And I would say the reason for that is several. Number one, initially, when Mr. White had his PSR, one of the cocaine convictions at issue was not identified as a potentially ACCA offense. It was true that the government initially, in the early proceedings, filed a document claiming, I believe, that that conviction should have been included, but I don't believe the government objected to the PSR. And at that point, I think there are some case audits that suggest that that narrows the field of what could be considered by the court at that point as potentially ACCA offenses. Counsel, if you would use real words rather than attempt to pronounce initialisms like ACCA, which is not a word, it would help us generalists. Thank you, Your Honor. So I think what you're saying is that the rule should be that for purposes of the Armed Career Criminal Act, the government has one shot, and it can put five, six, seven, whatever number of qualifying offenses it wants in there, but that you shouldn't put the burden on defendants to think that anything in their entire rap sheet may emerge as another possible predicate offense. Now, that's not the rule in some circuits. And it's really not even the rule that Dotson adopted, although Dotson took an incremental approach to this. Dotson said it's enough here because it's clear there was notice. There might be other cases where there was no notice. But the problem is you've got the one cocaine offense already, the within 100 feet of a church offense. So from the very start, you knew what this issue was or could have known. I think I have to agree with Your Honor that from the very start, the Ruth line of objection was arguably available to Mr. White. But I also would respectfully suggest to the court that is exceedingly novel interpretation of the statutes at issue. And so, in addition, I'm sorry. Are you asking us to disregard the holding in Boosley? Because Boosley said that doesn't do it unless there was a proviso in the court's opinion, unless the point was so novel that no lawyer could have understood the possibility of such a point. Are you saying that Ruth was so left field that no lawyer could have imagined the point? Of course, a lawyer made that argument in Ruth itself. Right. I certainly, Your Honor, that's a high bar. I don't think I want to be in a position of asking the court to disregard precedent. So I'm reluctant to say I'm asking the court to disregard Boosman. Why? That's a good thing. Why? At least in this circuit. Your Honor, what I was about to proceed to was that I do think there's an initial catchall for Mr. White in the 2255 provision that allows this court to consider cases that would that would be a fundamental miscarriage of justice were they to continue. And in this case, I don't believe it is a contested idea that under current case law, Mr. White would not qualify as an armed career criminal. And as a result, his sentence is 20 years longer, I believe, than what he could be sentenced to presently. And I still think he is allowed to proceed under that section of 2255. Although he's making a legal innocence argument, not an actual innocence argument, correct? Yes, Your Honor. Yes. I don't think there's any. Yes. Yes. OK, thank you very much, Mr. Brinkle. Mr. Reed. Judges and may it please the court, Peter Reed for the United States. So, Mr. Reed, can I start you out right where Mr. Brinkle ended? There are all sorts of arguments in this case that are floating around back and forth, some of which may have been waived, others of which have come in in strange ways. But at the end of the day, here's Mr. White with a 360-month sentence, 20 years longer than he would have gotten if he were tried today, because it's now clear that these predicate offenses cannot be used for purposes of the Armed Career Criminal Act. He would have had a 10-year statutory maximum, 120 months. And there's something profoundly disturbing. That seems, if that's not a miscarriage of justice, what is? Your Honor, I think as frequently comes up in these 2255 and 2241 cases, this is a balance of finality versus later changes in the law. Well, but don't just wave finality around. I mean, the fact is an extra 20 years of a person's life, that's his life basically, right? And there are safety valves, if you will, in the system. I hesitate to recommend that he use 2241 because we have lengthy discussions about when that's available or not. But the fact that a person outside the scope of the statute, as we now understand it, needs to serve so much extra time, seems to me like an extraordinarily harsh result under the statutes. And if the government just feels like, oh, well, tough, you know, you've got to break some eggs or something, I guess that's the government's position, but it's very troubling to me. Your Honor, I don't think that's the government's position. I think there are two problems with the miscarriage of justice argument raised in the reply brief on appeal. The first one is preservation. It was not raised in the district court below, and it was not raised in the opening brief on appeal. So for some procedural nicety, we're going to keep a guy in prison for an extra 20 years, support him, give him three meals a day, you know, whatever else we do with them. Your Honor, I don't think it's a procedural nicety. I think that it's a fundamental principle of this court, that it's a court of review and not first review. And so my second point, I think that there's a practical problem here as well. We also have a problem with the certificate of appealability. This doesn't appear to be a question listed in the certificate. Your Honor, that's correct. The certificate of appealability raises the Ruth decision. I don't think that it raises a miscarriage of justice question. No, it doesn't, although they can be amended at the appellate level. Yes, they can be. Sure. And part of the problem here is that under Ruth, Ruth left open an evidentiary question. It ruled that these positive isomers of cocaine, it took no position on the evidentiary question, whether these exist in reality. Positional isomers actually were the truth. Yes, excuse me, positional isomers, thank you. Whether positional isomers of cocaine exist in reality. And part of the practical problem with the lack of preservation in this case is that the United States never had an opportunity to address that question below. Think about this in terms of other kinds of claims that this court sees all the time in the 2255 context, like ineffective assistance of counsel claims. Ineffective assistance of counsel claim raised in the district court does not preserve all ineffective assistance of counsel claims on appeal. And for the same reason, the Johnson argument raised below does not preserve every argument as to ACCA predicates for appeal. And the reason is simple. You need to have an opportunity to respond to those arguments in the district court. And as in the ineffective assistance of counsel context, there may be evidence in the record or outside the record that could be raised. By the way, I'm interested in whether the United States has accepted Ruth. What is its litigation position now, either in this circuit or in other circuits where underlying state offenses refer to positional isomers? Your Honor, so Ruth held, I think, as to this narrow holding the United States has accepted, Ruth held that absent evidence that positional isomers of cocaine do not exist in reality, there's a categorical mismatch. Now, I can tell you that that factual question is certainly something that districts in this court and elsewhere are looking into. The United States recently filed a cert petition in a case called Alexis v. Barr, number 20-11 out of the Fifth Circuit. The Fifth Circuit takes a little bit different approach to these positional isomers than this court took in Ruth. And importantly, the United States, in that brief in opposition to cert, set forth that factual position. Again, I think there's an open factual question about whether these isomers exist in a reality and certainly whether they exist on the streets. This cert petition is still pending? I haven't seen it. I believe it was. Would you give me the docket number again? Yes, Your Honor. I believe it was denied. It's Alexis, A-L-E-X-I-S v. Barr. Oh, it's not a petition by the Solicitor General. No, Your Honor. I'm trying to figure out whether the United States has accepted the basic holding of Ruth or whether instead it is. Right.  I'm asking a legal question about whether the legal reasoning of Ruth has been accepted by the Department of Justice or is being contested in other circuits. I know there was no petition for certiorari filed in Ruth itself. We've got 49 other states, the District of Columbia, Puerto Rico. This is an issue that presumably is not going away. I'm asking you what is the legal position of the Department of Justice about the Ruth problem? My understanding, Your Honor, is that the United States would defend the Fifth Circuit's position that when it comes to making these kind of categorical comparisons, there must be a reasonable chance that the state would actually be prosecuting a case like this one. And as the United States argued in Ruth, there has never been a prosecution for these kind of isomers in the state of Illinois and the same position for the state of Texas, which has a similar law. So stepping out for a minute, I think there are two problems that we have here. The first is a preservation problem. The general rules of preservation should apply in the 2255 context. Under Frady and Federal Rule of Criminal Procedure 52, plain error review is reserved for direct appeal. There's also, I think, a procedural default problem under Boosley and under Reed. The question is whether the legal basis for an argument was available on direct appeal. There's no doubt. So why wouldn't the plain error doctrine for 2255 follow the same pattern that it does in civil cases? That is to say, not the same as the plain error doctrine in criminal cases and much more narrow, but we've never said that there is no such thing in civil cases. And habeas being one of those, it's sort of not criminal and not civil, but it's more civil than criminal in terms of its procedures. Your Honor, I think that the United States made pretty clear in the Frady decision, F-R-A-D-Y, that plain error review does not apply in the habeas context. And the reason for that— The United States can say that, but, I mean, is that—I'm asking, is that right? Well, Frady is a holding of the Supreme Court. Right. The Supreme Court said— It may, of course, not be right, but it is authoritative. It is authoritative, but I'm just making the point it's not because the United States decided to argue it. It's because the Supreme Court decided to accept it. Yes, Your Honor. I believe that the holding in Frady suggests that plain error review does not apply in appeal and that the typical preservation rules of this Court in civil cases should apply. And, again, this is pretty clear from prior cases in this context, the Hrabowski decision being one example. It's not a preservation decision, but it does show that raising one type of challenge under Johnson is not enough to preserve all challenges as to all ACCA predicates, because in that court—in that decision, the court rejected the habeas petition. Although that was a second petition in Hrabowski, correct? Yes, Your Honor, but I think the point still stands. In Hrabowski, the question was, you raised one. Does that mean you can raise others? The answer in Hrabowski was no. The same is true here for a different reason. In Hrabowski, it was because it was a second or successive petition. Here, it's because of preservation reasons. But the holding as to the scope of the claim is the same in both cases. The scope of the claim is you have to raise each predicate offense individually. And for the same reason—and for that reason, in Hrabowski and in this case, other predicate offenses cannot be raised for the first time on appeal. If the Court has no further questions, the United States would urge affirmance. Thank you. Thank you very much. The case is taken under advisement.